IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| JACQUELINE MILLER, Individually, as Representative of the ESTATE OF BRANDON RICE, Deceased, and as Next Friend of A. R., a Minor; and BARRY RICE, Individually, §§§§§§§ Plaintiffs, § § v. § § LG ELECTRONICS U.S.A., INC.; § and LG ELECTRONICS, INC., § § Defendants. § | CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Jacqueline Miller, individually, as Representative of the Estate of Brandon Rice, deceased, and as Next Friend of A.R., a minor; and Barry Rice, individually, ("Plaintiffs"), file this Original Complaint against Defendants LG Electronics, U.S.A., Inc. and LG Electronics, Inc. (together, "LG" or "Defendants"). In support thereof, Plaintiffs respectfully show the Court as follows:

### I.
### PARTIES

1.01   At all times relevant, Plaintiff Jacqueline Miller was and now is a citizen and resident of Texarkana, Bowie County, Texas.  She is the biological mother of Brandon Rice, deceased, and the grandmother, guardian and Next Friend of Plaintiff A.R., a minor.

1.02   At all times relevant, Plaintiff A.R. was and now is a citizen and resident of Texarkana, Bowie County, Texas.  He is the biological minor son of Brandon Rice, deceased.

1.03    At the time of his death, Brandon Rice, deceased ("Decedent") was a citizen and resident of Texarkana, Bowie County, Texas. Accordingly, Plaintiff Jacqueline Miller as Representative the Estate of Brandon Rice is a citizen of Texas.

1.04    At all times relevant, Plaintiff Barry Rice was and now is a citizen and resident of Newport News, Virginia. He is the biological father of Plaintiff Brandon Rice, deceased.

1.05    At all times relevant, Defendant LG Electronics, U.S.A., Inc. ("LGEUS") was and now is a corporation formed under the laws of the State of Delaware with its principal place of business in the State of New Jersey.  Thus, Defendant LGEUS is a resident of Delaware and New Jersey. It regularly sells and/or distributes products and does business in and throughout the State of Texas, including this District,  as a wholly owned subsidiary of Defendant LG Electronics, Inc. LGEUS may be served through its registered agent for service of process in Texas, United States Corporation Co, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

1.06    At all times relevant, Defendant LG Electronics, Inc. ("LGEI") was and now is a corporation organized under the laws of the Republic of Korea (a/k/a South Korea) with its principal place of business in Seoul, Korea. Thus, it is a citizen of the Republic of Korea. Defendant LGEI has had continuing and systematic contacts with the State of Texas by placing its products into the stream of commerce with the expectation that they would reach and be used in the State of Texas. The causes of action set forth herein arise from such contacts.  Defendant LGEI may be served with process by serving the Texas Secretary of State as the substituted agent for service of process under TEX. CIV. PRAC. & REM. CODE§§ 17.044(a) and (b) at the following address: Office of the Secretary of State, Statutory Documents Section - Citations Unit, 1019 Brazos Street, Austin, Texas 78701. The Secretary of State should forward Plaintiffs' Original Complaint and summons to Defendant at its principal place of business: LG Twin Towers 128,

Yeoui-daero, Yeongdeungpo-gu, Seoul, 07336 Korea.  Alternatively, LGEI may be served with process through the Republic of Korea's designated Central Authority under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (commonly referred to as the "Hague Convention"). The Republic of Korea's Central Authority may serve process on LG Electronics, Inc. at its principal place of business at the address set forth above.

## II.
### VENUE AND JURISDICTION

2.01    Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02    The Defendants reside in the Eastern District of Texas, Texarkana  Division, as the term is defined in 28 U.S.C. §1391 (c) (for venue purposes, a corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced). Additionally, venue is proper in the Eastern District of Texas, Texarkana Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Bowie County, Texas, which is in the Eastern District, Texarkana Division.  Plaintiff would show that the incident made basis of this suit occurred in Bowie County, Texas and Plaintiffs are residents of Bowie County.

## III.
### FACTS

3.01    This suit arises out of an incident that occurred on October 13, 2023 at the residence of Brandon Rice, deceased, in Texarkana, Texas.  Brandon resided in a small house behind his grandparents' home on land they own.  On the night of the incident, Brandon had been visiting his

grandparents at their home for several hours and left at around 10:00 pm to walk to his house, taking with him a paper plate with cornbread and a bowl of beans his grandmother had prepared earlier.  He intended to heat up the beans when he got to his house, then eat the beans and cornbread.

3.02   Tragically, Brandon was found dead in his home the following evening by his grandfather who then called for emergengy assisitance.  EMS and Fire Department personnel arrivered to find that Brandon had been dead for some time, there was still smoke in the house and his kitchen was burned from a fire that started on the stovetop of his LG Electronics 30' Slide-In Electric Range, Model LSEL6331F, Serial No. 204MMCW09091 ("Subject Range"). The fire had traveled from the stovetop up the wall, burning the microwave oven above the range, several cabinets and most of the kitchen ceiling before going out.

3.03   A front-mounted knob on the Subject Range that cotrolled one of the stovetop burners was still in the on position when firefighters arrived. The oven portion of the range was off and Brandon's bowl of beans from the night before was still in the microwave.  It was evident that he had returned from his grandparents house, placed the paper plate with cornbread on the stovetop and while putting the beans in the microwave, unintentionally bumped the control knob which, due to its unreasonably dangerous design, turned on the burner and eventually ignited the paper plate that caused the rest of the kitchen to burn.  Sadly, Brandon was apparently unaware that the fire had started and died in a rear hallway from excessive carbon dioxide with his two pet dogs laying dead beside him.

3.04   On February 6, 2025, LG issued a recall in the U.S. for about 500,000 of its ranges, including the Subject Range, describing the hazard as: **"Front-mounted knobs on the recalled ranges can be activated by accidental contact by humans or pets, posing a fire hazard."**  Prior

to issuing the recall, there were at least 86 reported cases of untintentional activation of the front-mounted knobs on LG ranges, resulting in more that 28 fires and property damage totaling over $340,000.  Many of the reported cases occurred well before Brandon's death and resulted in claims or lawsuits against LG.  **In fact, LG was aware of the defective knobs and the dangers they pose at least a year before the incident at issue, and likely much earlier**.

## IV.
## STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST DEFENDANTS

4.01    The Product at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of Defendants.

4.02    Defendants were regularly engaged in the business of supplying or placing products, like the Subject Range in question, in the stream of commerce for use by the consuming public, including decedent.  Further, such conduct was solely for commercial purposes.

4.03    The Subject Range remained unchanged from the time it was originally manufactured, distributed and sold by Defendants until it reached decedent and ultimately led to his injuries and damages.  Stated another way, the Subject Range was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04    At the time the Subject Range was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the Subject Range would be used by persons such as decedent in the manner and application in which it was being used at the time of the occurrence in question.

4.05    There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Subject Range at the time of manufacture and that governed the product risk that allegedly caused

harm. Alternatively, the design of the Subject Range did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the Subject Range model at the time of the manufacture and governed the risks that caused decedent's death. Again, in the alternative, in the event that such standards were in effect and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Subject Range, withheld or misrepresented the information or material relevant to the federal governments or agencies' determination of adequacy of the safety standards or regulations at issue in this action.

4.06   With respect to the design of the Subject Range, at the time it left the control of Defendants, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of accidental burner activation resulting in fire, injury and death. More specifically, there were alternative designs to the Subject Range that would have prevented the front-mounted knobs from being unintentionally and unknowingly depressed and turned so as to activate a burner. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of Defendants by the application of existing or reasonably achievable scientific knowledge.

4.07   At the time the Subject Range left the control of Defendants, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured, or marketed to minimize the risk of injury. By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

    a.    It was not reasonably fit or safe for use in clearly foreseeable circumstances and uses;

    b.    It was designed so that unintended and unkowing burner activation was possible during reasonably foreseeable use;

    c.    The design and location of the burner control knobs made it likely that persons would bump, rub across or otherwise make contact with them in clearly foreseeable circumstances and uses;

    d.    The design and location of the burner control knobs made it possible to depress and turn them if they were bumped, rubbed across or otherwise contacted by a person in clearly foreseeable circumstances and uses;

    e.    The design and location of the burner control knobs made it possible to unknowingly and unintentionally activate a burner if a knob was bumped, rubbed across or otherwise contacted by a person in clearly foreseeable circumstances and uses;

    f.    It lacked adequate audible and/or visual warnings to signal when a burner had been activated;

    g.    It lacked adequate warnings and/or instructions to alert the user that a burner could be unknowingly and unintentionally activate a burner if a knob was bumped, rubbed across or otherwise contacted by a person.

    h.    It lacked adequate warnings and/or instructions to alert the user that it was unsafe to use in a foreseeable manner.

4.08    The above unreasonably dangerous defects in the Subject Range in question were the proximate and producing cause of Plaintiff's injuries and damages.

4.09    Defendants breached their duty of care and were thus negligent by:

    a.    Failing to design the Model LSEL6331F ranges in such a way that they were reasonably fit for use in clearly foreseeable circumstances and uses;

    b.    Failing to design the the Model LSEL6331F ranges in a way to prevent unintended and unknowing burner activation during in clearly foreseeable circumstances and uses;

    c.    Design the the Model LSEL6331F ranges with front-mounted burner control knobs;

    d.    Failing to design the Model LSEL6331F ranges with burner control knobs that could not be accidentally and unknowingly depressed and turned to the ON position in clearly foreseeable circumstances and uses;

    e.    Failing to deisgn the Model LSEL6331F ranges with adequate audible and/or visual warnings to signal when a burner had been activated;

    f.    Designing and/or distributing the Model LSEL6331F ranges with a design standard that was intended to meet the minimum government regulations, instead of safely

       designing them to reasonably minimize unintended and/or unknowing burner activation with reasonably foreseeable use;

g. Failing to adequately test the Model LSEL6331F ranges to ensure that they would be reasonably safe with reasonably foreseeable use;

h. Failing to adequately test the Model LSEL6331F ranges to ensure there was minimal risk of unintended burner activation in reasonably foreseeable cicumstances and use;

i. Failing to adequately monitor the performance of the the Model LSEL6331F ranges in the field to ensure there was minimal risk of unintended burner activation in reasonably foreseeable cicumstances and use; and

j. Failing to recall, retrofit, or issue post-sale warnings when Defendants knew, or should have known, that the product was defective and unreasonably dangerous.

## V.
## DAMAGES

5.01    As a proximate result of the negligence of Defendants as above described, Plaintiffs Jacqueline Miller, Barry Rice, and A.R., a minor, individually, as Decedent's surviving biological parents and minor child, respectively, and statutory beneficiary under the Wrongful Death Statute, are entitled to bring this cause of action for all damages they have suffered as a result of the wrongful death of Decedent pursuant to Section 71 of the Texas Civil Practice and Remedies Code (the "Wrongful Death Statute").  Such wrongful death damages include Plaintiffs' pecuniary loss, meaning the loss of care, maintenance, support, services, advice, counsel and reasonable contributions of a pecuniary value they would, in reasonable probability, have received from Decedent had he lived; Plaintiffs' loss of companionship and society, meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society they would, in reasonable probability, have received from Decedent had he lived; Plaintiffs' mental anguish, meaning the emotional pain, torment, and suffering experienced by Plaintiffs because of the death of Decedent, and Plaintiffs' loss of inheritance resulting from the Decedent's death.

5.02   Plaintiff Jacqueline Miller, as Representative of the Estate of Brandon Rice, brings this action under the Texas Survival Statute to recover for Decedent's conscious pain and suffering, mental anguish, medical bills, funeral and burial expenses, and all other damages allowed by law.

## VI.
## EXEMPLARY DAMAGES

6.01   Plaintiffs allege that each and every negligent act or omission of Defendants and their agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Defendants had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Decedent and others like him and as such, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiffs now plead against Defendants. Additionally, by reason of such conduct, Plaintiffs are entitled to and therefore asserts a claim for punitive and exemplary damages in an amount sufficient to punish and deter Defendants, and other corporations like them, from such conduct in the future.

## VII.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.01   Plaintiffs claim pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VIII.
## JURY DEMAND

8.01   Plaintiffs respectfully request that the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer this Complaint and that upon final hearing, Plaintiffs recover judgment against all Defendants for their damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiffs may be entitled.

Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

**ATTORNEYS FOR PLAINTIFF**